FILED
U.S. DISTRICT COURT
S[...]

2015 JAN 30 PM 3:33

CLERK___ B. West
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

MC: 2:15_____   MC 2 1 5 - 0 0 2

IN RE: CAMERON IPPOLITO AND LOU VALOZE

## ORDER

Each District Court Judge in the Southern District of Georgia received a letter dated January 22, 2015 from the United States Attorney informing the Court that Assistant United States Attorney Cameron Ippolito and Special Agent Lou Valoze engaged in an improper relationship between 2009 through March 2014 and that Ippolito and Valoze mishandled an S Visa application and testimony about the application in 2012. A copy of that letter is attached to this Order as Attachment A.

The Court is appreciative of the candor of the United States Attorney in disclosing to the Court this impropriety. However, justice demands that the Court take further action to correct the form and augment the scope of this disclosure.

Accordingly, the Judges of this District unanimously Order that the following actions be taken:

1) The Court does not accept ex parte letters from counsel concerning criminal cases. Any information imparted to the Court shall be imparted to the Defense in the four cases referenced in the January 22, 2015 letter by copy of this Order and its attachment. The United States Attorney's Office is Ordered to provide said notice within five days.

2) Any action or ruling requested from the Court or any notification to the Court shall be in the form of a pleading or notice on the record. Neither the local rules of this Court nor the Federal Rules of Criminal Procedure will be ignored with regard to the requirements for filing ex parte communications or documents under seal.

3) While the Court understands that the United States Attorney has reached the unilateral decision that only four cases may be affected by the improprieties of AUSA Ippolito and Agent Valoze, fairness dictates that the Court refrain from adding its imprimatur to that unilateral determination. In order to begin the process of giving the defense an opportunity to argue whether such impropriety may have had an effect, the United States Attorney is Ordered to submit a list of all cases (identified by style, number and defense counsel) in which AUSA Ippolito and Agent Valoze collaborated. Such list shall be docketed in this Miscellaneous action within 15 days.

4) Neither AUSA Ippolito nor SA Valoze shall appear before the Court in an official, professional capacity in any proceeding until further Order. Either or both of these individuals may appear by Order of the Court or as witnesses under subpoena.

**SO ORDERED**, this __30__ day of January, 2015.

_____
The Honorable Lisa Godbey Wood
Chief United States District Judge
United States District Court for the
Southern District of Georgia

_____
The Honorable William T. Moore, Jr.
United States District Judge
United States District Court for the
Southern District of Georgia

AO 72A
(Rev. 8/82)

_____
The Honorable J. Randal Hall
United States District Judge
United States District Court for the
Southern District of Georgia

_____
The Honorable B. Avant Edenfield
Senior United States District Judge
United States District Court for the
Southern District of Georgia

_____
The Honorable Dudley H. Bowen, Jr.
Senior United States District Judge
United States District Court for the
Southern District of Georgia

# ATTACHMENT "A"



## U.S. Department of Justice

*United States Attorney*
*Southern District of Georgia*

---

*Post Office Box 8970*　　*Post Office Box 2017*
*Savannah, GA 31412*　　*Augusta, GA 30903*

*22 Barnard Street, Suite 300*　*600 James Brown Boulevard, Suite 200*
*Savannah, GA 31401*　　*Augusta, GA 30901*
*(912) 652-4422*　　*(706) 826-4520*

January 22, 2015

The Honorable Lisa Godbey Wood
Chief Judge, U. S. District Court
Southern District of Georgia
801 Gloucester Street
Brunswick, Georgia 31520

The Honorable William T. Moore, Jr.
Judge, U. S. District Court
Southern District of Georgia
125 Bull Street
Savannah, Georgia 31401

The Honorable J. Randal Hall
Judge, U. S. District Court
Southern District of Georgia
600 James Brown Boulevard
Augusta, Georgia 30901

The Honorable Dudley H. Bowen, Jr.
Senior Judge, U. S. District Court
Southern District of Georgia
600 James Brown Boulevard
Augusta, Georgia 30901

The Honorable B. Avant Edenfield
Senior Judge, U. S. District Court
Southern District of Georgia
125 Bull Street
Savannah, Georgia 31401

The Honorable Lisa Godbey Wood, et al.
Page Two
January 22, 2015


Dear Judges:

I write to inform this Court of several disclosures that will be made today pursuant to Giglio v. United States, 405 U.S. 150 (1972), to defense attorneys in four closed criminal cases. Copies of those disclosures are enclosed.

Those disclosures will include: (1) that Assistant United States Attorney Cameron Ippolito and ATF Special Agent Lou Valoze engaged for years in an affair; (2) that Agent Valoze, assisted by AUSA Ippolito, provided potentially false or misleading information to a government agency to secure a visa for a government informant; and (3) that Agent Valoze, under questioning by AUSA Ippolito during a criminal trial, provided potentially false or misleading testimony regarding benefits provided to that government informant.

1. The Relationship Between Ippolito and Valoze

For years, AUSA Ippolito and Agent Valoze carried on an affair. The affair appears to have lasted from 2009 through March 2014, throughout three major ATF "storefront" operations in the Southern District of Georgia: Operations Statesboro Blues, Thunderbolt, and Pulaski. AUSA Ippolito was the lead prosecutor and Agent Valoze was the lead case agent in all three of those operations. They also worked together on a number of other cases. At no point during the prosecution of any of those cases was the fact of the affair disclosed by Agent Valoze or AUSA Ippolito to any of the defendants in their cases or to their respective supervisors in ATF or the U. S. Attorney's Office.

During the affair, Agent Valoze testified in the Southern District of Georgia on numerous occasions, in numerous contexts, and in numerous cases, often at the direction of AUSA Ippolito. He testified to establish probable cause to support the return of indictments before the grand jury, to establish a factual basis for the acceptance of defendants' guilty pleas, and to support the imposition of sentencing enhancements. He also testified as a witness in three criminal jury trials. The government's approach in each context is set out below.

*Testimony in contested hearings (trial, sentencing, suppression).* In every case from 2009 to the present in which Agent Valoze testified in a contested hearing, including trial, sentencing, or an evidentiary hearing on a suppression or other pretrial motion, from the inception of the affair to the present, the government intends to disclose the fact of the affair to defense counsel. In those contexts, Agent

The Honorable Lisa Godbey Wood, et al.
Page Three
January 22, 2015

Valoze's testimony arguably was material to guilt or punishment, and the affair could have been a viable subject of cross-examination into his bias. See, e.g., In re McDonald, 514 F.3d 539 (6th Cir. 2008) (prosecutor/witness relationship); United States v. Welton, 2009 WL 2390848 (C.D. Cal. 2009) (agent/AUSA relationship); Gurel v. Busby, 2012 WL 5188159 (C.D. Cal. 2012) (Assistant District Attorney/police officer relationship).

The cases in which Agent Valoze testified in these contexts, and disclosure of the affair thus will be made, are United States v. Johnny Mack Brown, CR 210-031 (trial before Judge Wood), United States v. Jason C. Walker, CR 210-056 (trial before Judge Wood), United States v. Willie D. Woody, CR 210-062 (sentencing before Judge Wood), and United States v. Eduardo Cruz-Camacho, CR 413-129 (trial before Judge Edenfield).

By disclosing the fact of the affair, the government does not intend to concede that a new trial or sentencing is necessary in any of these cases. Rather, should the defendants move for that relief, the government reserves its right to argue that impeachment on the basis of the affair would not have altered the outcome of any of those proceedings.

*Testimony before the grand jury.* As to cases in which Agent Valoze's testimony only occurred before the grand jury, the government does not intend to make any disclosures about the affair to defense counsel. A prosecutor is not required, under the principles of Brady or Giglio,[1] to present impeaching or exculpatory evidence to the grand jury in the course of obtaining an indictment. See United States v. Gilbert, 198 F.3d 1293, 1304 (11th Cir. 1999) ("It is settled law that the prosecution is not required to include exculpatory evidence in its presentation to the grand jury."). Requiring the presentation of such evidence before the grand jury:

> would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body. It is axiomatic that the grand jury

---

[1] The government is obligated in criminal cases to provide to the defense any evidence favorable to the accused and material to guilt or punishment. See Brady v. Maryland, 373 U.S. 83 (1963). This obligation extends to evidence affecting the credibility of the government's witnesses, see Giglio v. United States, 405 U.S. 150 (1972).

The Honorable Lisa Godbey Wood, et al.
Page Four
January 22, 2015

> sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been though sufficient to hear only the prosecutor's side . . . . Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system.

United States v. Williams, 504 U.S. 36, 51-52, 112 S. Ct. 1735 (1992) (internal citations omitted).[2]

*Testimony during change-of-plea hearings.* As to cases in which Agent Valoze's testimony was limited to establishing a factual basis for the acceptance of a defendant's guilty plea, the government does not intend to make any disclosures about the affair to defense counsel. "The Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622 (2002). Moreover, a defendant waives all pre-plea violations of his constitutional rights by pleading guilty. See also Tollett v. Henderson, 411 U.S. 358, 266-67 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

2.   Preparation of S Visa for Government Informant

The U.S. Department of Homeland Security can provide an "S Visa" to a non-citizen who has assisted a law enforcement agency as a witness or an informant, permitting them to remain in this country on account of that assistance. Only a federal or state law enforcement agency, or a U.S. Attorney's Office, may submit a request for an "S Visa." An "S Visa" is issued for three years, and no

---

[2]   Under Section 9-11.233 of the United States Attorneys' Manual (USAM), prosecutors are required to disclose "substantial evidence that directly negates the guilt of a subject of the investigation" to the grand jury before seeking an indictment. The USAM does not create or confer any rights, privileges, or benefits to defendants, and is not intended to have the force of law. See United States v. Caceres, 440 U.S. 741 (1979). Moreover, the affair itself is not guilt-negating and therefore would not have been required under the USAM to be disclosed to the grand jury.

The Honorable Lisa Godbey Wood, et al.
Page Five
January 22, 2015

extensions are granted. If the individual completes the terms of his "S Visa," then the law enforcement agency may later submit an application for permanent residence (a "green card") on the individual's behalf.

During the course of Operation Thunderbolt and Operation Pulaski, Agent Valoze worked closely with an informant. That informant identified numerous targets for the operations, and he brought many of those targets to the ATF storefronts. The informant was not a U.S. citizen, and, in May 2012, the ATF filed a request that the informant be granted an "S Visa" on account of the assistance he had provided and continued to provide.

The application for the informant's "S Visa" was prepared by Agent Valoze and AUSA Ippolito. That application required disclosure, under penalty of perjury, of every potential ground for inadmissibility of the informant, including prior criminal conduct, even that conduct of which the informant was merely accused and not convicted. The application prepared by Agent Valoze and AUSA Ippolito failed to disclose the informant's felony warrants for commercial gambling and counterfeiting, his apparent thefts from the ATF's storefront in Brunswick while serving as an informant, and his prior arrests for domestic violence. It appears that each of those potential grounds for inadmissibility was known to Agent Valoze and AUSA Ippolito at the time. The application further represented that the informant had been granted pretrial diversion on account of his cooperation, but failed to disclose that he had been removed from the diversion program based on significant criminal conduct that continued during his work for law enforcement.

A witness's prior false statements under oath are a viable ground for impeachment. See Fed. R. Crim. P. 608(b). Agent Valoze's incomplete or misleading statements in the "S Visa" application, in May 2012, arguably could have been used to impeach his testimony in later cases. The government therefore intends to disclose the relevant facts regarding his statements in the "S Visa" application in all cases in which Agent Valoze testified in contested hearings after May 2012. Only one case falls within that category: United States v. Eduardo Cruz-Camacho, CR 413-129, discussed more fully in the next section.

For the same reasons discussed supra, the government does not intend to make any disclosures of this matter in cases where Agent Valoze's testimony was limited to grand jury proceedings or change-of-plea hearings.

The Honorable Lisa Godbey Wood, et al.
Page Six
January 22, 2015

3.  Testimony About Informant in Cruz-Camacho Trial.

One of the cases that involved the informant was United States v. Cruz-Camacho, a case that arose out of Operation Pulaski in Savannah. During the investigation, the informant identified Cruz-Camacho as a potential target and introduced him to the undercover ATF agents at the storefront. The government made the decision not to call the informant at trial, and no impeaching information regarding the informant was provided to the defendant in discovery. At that trial, however, one of Cruz-Camacho's defenses was that he was entrapped or coerced by the informant.

Agent Valoze was asked on direct examination by AUSA Ippolito, during the trial, about the benefits received by that informant: "What was the reason that [the] informant was working as an informant?  What benefit would he receive?" Agent Valoze responded, "He receives status in this country to be here legally is his benefit that he receives."

Agent Valoze's response failed to disclose numerous other benefits that he personally provided, or was involved in providing, to the informant, including: (1) the dismissal of federal charges against the informant in favor of pretrial diversion, (2) the dead docketing of gambling charges against the informant, (3) the government's refusal to pursue charges against the informant after he was terminated from the pretrial diversion program, (4) the government's refusal to pursue theft charges against the informant for his apparent thefts from the Brunswick storefront, (5) ATF's intervention to have the informant released from an immigration removal detention center, (6) ATF's requests that the informant be granted work authorizations and permanent immigration status, and (7) ATF's efforts to secure the informant a license from the state of Georgia to operate amusement machines.  Evidence suggests that AUSA Ippolito knew that those benefits had been provided to the informant at the time of this testimony. Arguably, Agent Valoze's testimony left a false impression with the jury that the only benefit received by the informant in exchange for his assistance was legal status in the United States.

The knowing use of false testimony by the government would violate due process, see Napue v. Illinois, 360 U.S. 264, 269 (1959), and it would require a new trial if there was a "reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976).

The Honorable Lisa Godbey Wood, et al.
Page Seven
January 22, 2015

The government does not concede that Agent Valoze's testimony meets that standard, but it intends to disclose to the defense attorney in <u>Cruz-Camacho</u> that Valoze's testimony omitted the benefits to the informant listed above.

Agent Valoze did not testify in any contested hearing following the <u>Cruz-Camacho</u> trial in November 2013. If he had, the government would have disclosed, in those later cases, his potentially false and misleading testimony in <u>Cruz-Camacho</u> as a source of impeachment.

* * * * *

These disclosures result from a thorough review conducted by the U.S. Attorney's Office over the past several months in close consultation with authorities at the Department of Justice. Internal Department investigations of these matters are ongoing.

If you have any questions or concerns, please let me know.

Sincerely,

Edward J. Tarver
United States Attorney



# U.S. Department of Justice

*United States Attorney*
*Southern District of Georgia*

---

| | |
|---|---|
| *Post Office Box 8970* | *Post Office Box 2017* |
| *Savannah, GA 31412* | *Augusta, GA 30903* |
| | |
| *22 Barnard Street, Suite 300* | *600 James Brown Boulevard, Suite 200* |
| *Savannah, GA 31401* | *Augusta, GA 30901* |
| *(912) 652-4422* | *(706) 826-4520* |

January 22, 2015

Amy Lee Copeland
Amy Lee Copeland, LLC
P.O. Box 23358
Savannah, Georgia 31403

Kevin Gough
Public Defender Office
11 Judicial Lane, Suite 11
Brunswick, Georgia 31520

    Re:    <u>United States v. Johnny Mack Brown</u>, CR 210-031 (S.D. Ga.)

Dear Mr. Gough and Ms. Copeland:

    I write to make a disclosure pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), in the above-referenced case.

    The lead prosecutor in that case, Assistant United States Attorney Cameron Ippolito, and the lead case agent, ATF Special Agent Lou Valoze, engaged in an affair during the case's investigation and prosecution. Agent Valoze testified at the trial of the defendant without disclosing the affair. That affair constituted a potential source of impeachment as to his bias.

    If you have any questions, please let me know.

                                    Sincerely,

                                    EDWARD J. TARVER
                                    UNITED STATES ATTORNEY

                                    James D. Durham
                                    First Assistant U. S. Attorney



# U.S. Department of Justice

*United States Attorney*
*Southern District of Georgia*

---

| | |
|---|---|
| *Post Office Box 8970* | *Post Office Box 2017* |
| *Savannah, GA 31412* | *Augusta, GA 30903* |
| | |
| *22 Barnard Street, Suite 300* | *600 James Brown Boulevard, Suite 200* |
| *Savannah, GA 31401* | *Augusta, GA 30901* |
| *(912) 652-4422* | *(706) 826-4520* |

January 22, 2015

Richard H. Taylor
Richard H. Taylor, Attorney at Law
1614 Ellis Street
Brunswick, Georgia 31520

    Re:    United States v. Jason C. Walker, CR 210-056 (S.D. Ga.)

Dear Mr. Taylor:

    I write to make a disclosure pursuant to Giglio v. United States, 405 U.S. 150 (1972), in the above-referenced case.

    The lead prosecutor in that case, Assistant United States Attorney Cameron Ippolito, and the lead case agent, ATF Special Agent Lou Valoze, engaged in an affair during the case's investigation and prosecution. Agent Valoze testified at the trial of the defendant without disclosing the affair. That affair constituted a potential source of impeachment as to his bias.

    If you have any questions, please let me know.

                    Sincerely,

                    EDWARD J. TARVER
                    UNITED STATES ATTORNEY

                    James D. Durham
                    First Assistant U. S. Attorney



## U.S. Department of Justice

*United States Attorney*
*Southern District of Georgia*

| | |
|---|---|
| *Post Office Box 8970* | *Post Office Box 2017* |
| *Savannah, GA 31412* | *Augusta, GA 30903* |
| | |
| *22 Barnard Street, Suite 300* | *600 James Brown Boulevard, Suite 200* |
| *Savannah, GA 31401* | *Augusta, GA 30901* |
| *(912) 652-4422* | *(706) 826-4520* |

January 22, 2015

John Paul McQuigg
Whelchel & McQuigg, LLC
504 Beachview Drive
Suite 3-D
St. Simons, Georgia 31522

    Re:    <u>United States v. Willie D. Woody</u>, CR 210-062 (S.D. Ga.)

Dear Mr. McQuigg:

    I write to make a disclosure pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), in the above-referenced case.

    The lead prosecutor in that case, Assistant United States Attorney Cameron Ippolito, and the lead case agent, ATF Special Agent Lou Valoze, engaged in an affair during the case's investigation and prosecution. Agent Valoze testified at the sentencing of the defendant without disclosing the affair. That affair constituted a potential source of impeachment as to his bias.

    If you have any questions, please let me know.

                                    Sincerely,

                                    EDWARD J. TARVER
                                    UNITED STATES ATTORNEY

                                    James D. Durham
                                    First Assistant U. S. Attorney



# U.S. Department of Justice

*United States Attorney*
*Southern District of Georgia*

*Post Office Box 8970*       *Post Office Box 2017*
*Savannah, GA 31412*         *Augusta, GA 30903*

*22 Barnard Street, Suite 300*   *600 James Brown Boulevard, Suite 200*
*Savannah, GA 31401*             *Augusta, GA 30901*
*(912) 652-4422*                 *(706) 826-4520*

January 22, 2015

Anne Pannell Rodman
Law Office of Anne Pannell
P.O. Box 14064
Savannah, Georgia 31406

    Re:    United States v. Eduardo Cruz-Camacho, CR 413-129 (S.D. Ga.)

Dear Ms. Rodman:

    I write to make a disclosure pursuant to Giglio v. United States, 405 U.S. 150 (1972), in the above-referenced case.

### 1. The Relationship Between Ippolito and Valoze

    The lead prosecutor in that case, Assistant United States Attorney Cameron Ippolito, and the lead case agent, ATF Special Agent Lou Valoze, engaged in an affair during the case's investigation and prosecution. Agent Valoze testified at the trial of the defendant without disclosing the affair. That affair constituted a potential source of impeachment as to his bias.

### 2. Preparation of S-Visa for Government Informant

    The U.S. Department of Homeland Security can provide an "S Visa" to a non-citizen who has assisted a law enforcement agency as a witness or an informant, permitting them to remain in this country on account of that assistance. Only a federal or state law enforcement agency, or a U.S. Attorney's Office, may submit a request for an "S Visa." An "S Visa" is issued for three years, and no extensions are granted. If the individual completes the terms of his "S Visa," then the law enforcement agency may later submit an application for permanent residence (a "green card") on the individual's behalf.

    During the course of Operation Thunderbolt and Operation Pulaski, Agent Valoze worked closely with an informant. That informant identified numerous targets for the operations, and he brought many of those targets to the ATF storefronts. The informant

Anne Pannell Rodman
Page Two
January 22, 2015

was not a U. S. citizen, and, in May 2012, the ATF filed a request that the informant be granted an "S Visa" on account of the assistance he had provided and continued to provide.

The application for the informant's "S Visa" was prepared by Agent Valoze and AUSA Ippolito. That application required disclosure, under penalty of perjury, of every potential ground for inadmissibility of the informant, including prior criminal conduct, even that conduct of which the informant was merely accused and not convicted. The application prepared by Agent Valoze and AUSA Ippolito failed to disclose the informant's felony warrants for commercial gambling and counterfeiting, his thefts from the ATF's storefront in Brunswick while serving as an informant, and his prior arrests for domestic violence. It appears that each of those potential grounds for inadmissibility was known to Agent Valoze and AUSA Ippolito at the time. The application further represented that the informant had been granted pretrial diversion on account of his cooperation, but failed to disclose that he had been removed from the diversion program based on significant criminal conduct that continued during his work for law enforcement.

3. Testimony About Informant During Trial

The informant was involved in Cruz-Camacho's case. Agent Valoze was asked on direct examination by AUSA Ippolito, during Cruz-Camacho's trial, about the benefits received by that informant: "What was the reason that [the] informant was working as an informant? What benefit would he receive?" Agent Valoze responded, "He receives status in this country to be here legally is his benefit that he receives."

Agent Valoze's response failed to disclose numerous other benefits that he personally provided, or was involved in providing, to the informant, including: (1) the dismissal of federal charges against the informant in favor of pretrial diversion, (2) the dead docketing of gambling charges against the informant, (3) the government's refusal to pursue charges against the informant after he was terminated from the pretrial diversion program, (4) the government's refusal to pursue theft charges against the informant for his thefts from the Brunswick storefront, (5) ATF's intervention to have the informant released from an immigration removal detention center, (6) ATF's requests that the informant be granted work authorizations and permanent immigration status, and (7) ATF's efforts to secure the informant a license from the state of Georgia to operate amusement machines. Evidence suggests that AUSA Ippolito knew that those benefits had been provided to the informant at the time of this testimony.

Anne Pannell Rodman
Page Three
January 22, 2015

If you have any questions, please let me know.

Sincerely,

EDWARD J. TARVER
UNITED STATES ATTORNEY

James D. Durham
First Assistant U. S. Attorney