FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2018 APR 11 AM 9:42
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

IN RE: CAMERON IPPOLITO  *  MISC. NO. 215-002

O R D E R

Before the Court is former Assistant United States Attorney Cameron Ippolito's "Motion to Vacate and Dismiss" an Order entered by the Court in this miscellaneous case on January 30, 2015 (hereinafter, the "January 2015 Order"). (Doc. No. 5.) At the outset, it should be noted that the subject Order was subscribed by each of the then serving active and senior judges of this Court. (See Doc. No. 1.) This Order is subscribed by the four remaining judges, thereby endorsing each of its particulars.

Also noteworthy at the outset is the fallacy of the assumption that premises the third full paragraph of the instant motion, which begins: "Subsequently, as the Court is aware . . . ." (Doc. No. 5, at 2.) Any reliance upon this assumption is mistaken; it cannot be assumed that each of the signatory judges is or was otherwise aware of the specifics contained therein prior to reading the motion. Moreover, with regard to Ms. Ippolito and her standing as a practitioner before this Court, the findings of the Department of Justice's

Office of Inspector General and those of the Virginia State Bar may be matters of interest, but they are neither determinative nor persuasive.

In the retrospective view of the motion and the summary supplied for the actions taken by the Virginia State Bar, the Court detects an implication that the then United States Attorney, Edward J. Tarver, in his timing and methods, acted precipitously, ultra vires, or arbitrarily. Any such suggestion is specifically and absolutely rejected by this Court. While it is true that the Court instructed Mr. Tarver to refrain from submitting matters in pending or recent cases using the format of a letter to the Court, his decision to disclose in detail the information upon which the January 2015 Order was based was appropriate, necessary, even unavoidable. It was the only responsible thing to do under extant circumstances.

The chronological context of the January 2015 Order cannot be ignored. The seven-page letter from Mr. Tarver was dated January 22, 2015. The judges of the district had less than one week to review the matter, consider it, and confer prior to the entry of the Order. Movant is correct in the assessment that the "effect [of the January 2015 Order] was to freeze the status quo and to avoid any further potential taint of then-pending criminal proceedings." (Mot. to Vacate, at 1.) With full benefit of the record of investigations by the

2

Office of the Inspector General and the Virginia State Bar, the proceedings of which this Court was not apprised, Movant now dismissively asserts: "The Virginia State Bar has publicly reprimanded Ms. Ippolito for a **technical violation** of the Rule regarding Special Responsibilities of a Prosecutor." (Id. at 2 (emphasis added).) Further, Movant asserts: "Neither the Office of Inspector General nor the United States Attorney . . . accepted any charges in reference to the allegations made by former United States Attorney Tarver." (Id.) Whether Ms. Ippolito has been the subject of criminal investigation or prosecution is, in the context of her standing before the Bar of this Court, immaterial. Likewise, Movant's characterization of Ms. Ippolito's defalcation regarding the special responsibilities of a prosecutor as a "technical violation" is far from apposite.[1]

To "avoid any further potential taint of then-pending criminal proceedings" is not the single reason prompting this Court's Order that Ms. Ippolito should not "appear before the Court in an official, professional capacity in any proceeding until further Order." This Court's permit that an individual may plead, appear, and practice, whether as an Assistant

---

[1] "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935).

3

United States Attorney or as a private attorney at law, includes by way of implication the Court's endorsement of the individual attorney as a member of its Bar **in good standing**. Through Mr. Tarver's ample letter of January 22, each judge of the Court was made aware of the numerous transgressions of Ms. Ippolito and Special Agent Valoze, generally involving:

- A) Failure to disclose Giglio information to numerous defendants in criminal cases;
- B) Misleading testimony elicited from S.A. Valoze, by AUSA Ippolito;
- C) Actions taken by S.A. Valoze at the direction or with the knowledge of AUSA Ipplito; and
- D) S.A. Valoze's procurement of an "S" visa for an informant based upon disingenuous and false information, known to be such by AUSA Ippolito.

The nature of Mr. Tarver's letter cannot be ignored. The United States Government's disclosure of exculpatory material and impeachment evidence is part of the constitutional guarantee to a fair trial. See Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972). To that end, the Department of Justice has developed policies for federal prosecutors regarding the disclosure of Brady/Giglio evidence. See, e.g., U.S. Attorney's Manual, 9-5.001, "Policy Regarding Disclosure of Exculpatory and Impeachment Information." Further, the Department of Justice

has implemented a policy regarding disclosure by investigative agencies to federal prosecutors of Giglio information. See U.S. Attorney's Manual, 9-5.100, "Policy Regarding the Disclosure to Prosectors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses ('Giglio Policy')." Here, Ms. Ippolitio had first-hand knowledge of potential Giglio material, indeed, creating it by her own conduct. The failure of an Assistant United States Attorney to disclose potential Giglio material where that failure is attributable to the author of the problem is alone sufficient to justify the action taken by this Court.

In issuing its January 2015 Order, this Court acted in protection of the rights of criminal defendants, in protection of the public, to uphold the dignity of the judicial process as a whole, and to stem further incursions or insult to its processes. During the period from the receipt of Mr. Tarver's letter until the entry of the January 2015 Order, the judges of the Court, beyond whatever personal disappointment the letter may have caused, apprehended the potential for a sharp and significant workload increase due to a perception of need to unravel the complications in their respective caseloads precipitated by the conduct of Ms. Ippolito and S.A. Valoze. In short, to allow the continued appearance before the Court by both or either of Ms. Ippolito or S.A. Valoze was an untenable prospect given the confusion between their personal

intimacies and their official duties. The Court perceived a diminution of credibility which was unacceptable to the judges and which would, if known, erode the confidence of the public.

Nevertheless, while these underlying facts remain unchanged, Movant requests that the January 2015 Order be vacated.[2] To vacate a prior order is essentially to annul or render the order void of any effect. Generally, vacating an order operates *ab initio*. Because the Order of January 2015, entered under virtual emergency circumstances, reflected the clear intent of this Court and each of its judges toward the salutary purpose of avoiding the taint of Ms. Ippolito's improprieties upon other cases, to prevent the further potential erosion of public confidence, and to minimize the potential for the abridgement of rights guaranteed to criminal defendants in this district under federal and constitutional law, this Court will not consider vacating the Order. The January 2015 Order shall remain of full force, effect, and a part of the record in this proceeding.

Finally and pragmatically, it must be noted that any attorney presented to this district court as a vetted and sworn Assistant United States Attorney is initially afforded admission to its Bar and accorded a level of privilege, respect, and presumptive ability. Thus, an Assistant United

---

[2] According to Black's Law Dictionary, "vacate" means "to annul; to set aside; to cancel or rescind."

States Attorney may plead and practice before the Court whether or not that individual otherwise meets the standards of admission to its Bar. Ms. Cameron Heaps Ippolito is not listed as a member of the State Bar of Georgia. Rather, she is a member of the State Bar of Virginia. Her admission to the Bar of this District was *ex officio*, accomplished only through her hire in the United States Attorney's Office around December 1999. According to the motion, Ms. Ippolito is no longer an Assistant United States Attorney, therefore she is no longer entitled to "streamlined admission" of her former position.

Upon the foregoing and for the reasons stated herein, the "Motion to Vacate and Dismiss" filed on behalf of Ms. Cameron Ippolito (doc. no. 5) is **DENIED**. The Order of January 30, 2015, shall remain of full force and effect. **IT IS FURTHER ORDERED** that the Clerk of this Court shall file this Order in each of his respective divisional offices for Augusta, Brunswick, and Savannah.

SO ORDERED, this 11th day of April, 2018.

_____
HONORABLE J. RANDAL HALL
CHIEF UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

_____
HONORABLE DUDLEY H. BOWEN, JR.
SENIOR UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

_____
HONORABLE WILLIAM T. MOORE, JR.
SENIOR UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA